OPERATING AGREEMENT

OF

ASA LATE MODEL SERIES, LLC



EXHIBIT A

LMS 0003

# TABLE OF CONTENTS

                                                                                                  **Page**

ARTICLE I.   PURPOSE ............................................................................................................ 1

ARTICLE II.   ORGANIZATIONAL MATTERS ........................................................................ 1

    Section 2.1    Formation ............................................................................................. 1
    Section 2.2    Principal Place of Business .................................................................. 1
    Section 2.3    Registered Office and Registered Agent .............................................. 1
    Section 2.4    Duration ............................................................................................... 1

ARTICLE III.   CAPITAL STRUCTURE ................................................................................... 2

    Section 3.1    Units Representing Membership Interests ........................................... 2
    Section 3.2    Capital Contributions ........................................................................... 2
    Section 3.3    Additional Capital Contributions ......................................................... 2
    Section 3.4    Capital Accounts .................................................................................. 2
    Section 3.5    No Right of Redemption ...................................................................... 3
    Section 3.6    Member Loans or Services .................................................................. 3
    Section 3.7    Sale of Additional Units and Admission of Additional Members ....... 3

ARTICLE IV.   MEMBERS ....................................................................................................... 3

    Section 4.1    Names and Addresses of Members ...................................................... 3
    Section 4.2    Action by the Members ....................................................................... 3
    Section 4.3    Conflicts of Interest .............................................................................. 5
    Section 4.4    Action by the Remaining Members ..................................................... 5
    Section 4.5    Waiver of Partition .............................................................................. 5
    Section 4.6    Limitation on Authority ....................................................................... 5
    Section 4.7    Liability ............................................................................................... 6

ARTICLE V.   MANAGEMENT OF THE COMPANY .............................................................. 6

    Section 5.1    Manager ............................................................................................... 6
    Section 5.2    Powers of the Manager ........................................................................ 6
    Section 5.3    Salaries ................................................................................................. 7
    Section 5.4    Removal ............................................................................................... 7
    Section 5.5    Resignation .......................................................................................... 7
    Section 5.6    Vacancies ............................................................................................. 7
    Section 5.7    Delegation of Certain Management Authority .................................... 7

ARTICLE VI.   ACCOUNTING AND RECORDS ...................................................................... 7

    Section 6.1    Records and Accounting ...................................................................... 7
    Section 6.2    Access to Accounting Records ............................................................ 8
    Section 6.3    Annual Tax Information ...................................................................... 8
    Section 6.4    Accounting Decisions .......................................................................... 8
    Section 6.5    Federal Income Tax Elections .............................................................. 8

ARTICLE VII. ALLOCATIONS AND DISTRIBUTIONS ................................................................. 8
   Section 7.1   Allocation of Net Income, Net Loss or Capital Gains ................................. 8
   Section 7.2   Special Allocations ........................................................................................ 8
   Section 7.3   Curative Allocations ...................................................................................... 8
   Section 7.4   Distribution of Available Cash ................................................................... 10
   Section 7.5   Allocation of Income and Loss and Distributions in Respect of Interests Transferred ................................................................................................. 10

ARTICLE VIII. RESTRICTIONS ON WITHDRAWAL AND TRANSFERS OF INTERESTS 11
   Section 8.1   Withdrawal .................................................................................................. 11
   Section 8.2   Basic Restrictions on Transfer .................................................................. 11
   Section 8.3   Further Restrictions on Transfer ............................................................... 11
   Section 8.4   Status of Transferee and Transferor ......................................................... 11
   Section 8.5   Pledge of Interests ...................................................................................... 12

ARTICLE IX. DISSOCIATION OF A MEMBER ........................................................................... 12
   Section 9.1   Dissociation ................................................................................................. 12
   Section 9.2   Rights of Dissociating Member ................................................................ 13

ARTICLE X. DISSOLUTION AND WINDING UP ...................................................................... 13
   Section 10.1   Dissolution ................................................................................................. 13
   Section 10.2   Winding Up ............................................................................................... 13
   Section 10.3   Distribution of Assets ............................................................................... 14

ARTICLE XI. INVESTMENT REPRESENTATIONS ..................................................................... 14

ARTICLE XII. AMENDMENTS ....................................................................................................... 15
   Section 12.1   Proposal of Amendments ......................................................................... 15
   Section 12.2   Approval of Amendments ........................................................................ 15

ARTICLE XIII. MISCELLANEOUS .................................................................................................. 15
   Section 13.1   Complete Agreement ................................................................................ 15
   Section 13.2   Governing Law ......................................................................................... 16
   Section 13.3   Binding Effect; Conflicts ......................................................................... 16
   Section 13.4   Headings; Interpretation ........................................................................... 16
   Section 13.5   Severability ............................................................................................... 16
   Section 13.6   Multiple Counterparts .............................................................................. 16
   Section 13.7   Additional Documents and Acts ............................................................. 16
   Section 13.8   No Third Party Beneficiary ..................................................................... 16
   Section 13.9   Notices ...................................................................................................... 17
   Section 13.10  Title to Company Property ..................................................................... 17
   Section 13.11  No Remedies Exclusive ........................................................................... 17
   Section 13.12  Advice of Counsel ................................................................................... 17
   Section 13.13  Incorporated Schedules and Exhibits ..................................................... 17

LMS 0005

OPERATING AGREEMENT

OF

ASA LATE MODEL SERIES, LLC

THIS OPERATING AGREEMENT (this "Agreement") is made and entered into this 12th day of December, 2003 (the "Effective Date"), by and among American Speed Association, L.L.C., an Indiana limited liabiilty company, Louie R. Varney, Jr. and ASA Late Model Series, LLC, an Indiana limited liabiilty company (the "Company"). The Company was organized as a limited liability company under the Indiana Business Flexibility Act, as amended, Ind. Code §23-18-1-1 et seq. (the "Act"). Certain defined terms used in this Agreement and not otherwise defined herein are set forth in Schedule I (Schedule of Definitions) attached hereto and made a part hereof. In consideration of the mutual covenants and agreements contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties agree as follows:

ARTICLE I.

PURPOSE

As set forth in the Company's Articles of Organization (the "Articles"), the purpose of the Company is to conduct any and all lawful business and activities for which limited liability companies may be organized under the Act.

ARTICLE II.

ORGANIZATIONAL MATTERS

Section 2.1    Formation. The Company was formed pursuant to the Act upon the filing of the Articles with the Indiana Secretary of State on December 12, 2003. The Members hereby agree to operate the Company upon the terms and conditions set forth in this Agreement. The rights and obligations of the Members with respect to the Company, and each other, shall be as provided under the Act, the Articles and this Agreement. The Members agree to each of the provisions of the Articles and this Agreement.

Section 2.2    Principal Place of Business. The principal place of business of the Company shall be 203 South Heritage Way, Pendleton, Indiana 46064, or such other address as may be established by the Members.

Section 2.3    Registered Office and Registered Agent. The Company's registered office shall be at its Principal Office and the name of its initial registered agent at such address shall be Stephen M. Dale. The Company may designate another registered office or agent at any time by following the procedures set forth in the Act.

Section 2.4    Duration. The existence of the Company shall continue in perpetuity, unless the Company is dissolved in accordance with Article X of this Agreement or the Act.

LMS 0006

## ARTICLE III.

## CAPITAL STRUCTURE

Section 3.1    Units Representing Membership Interests. The Interests of the Members in the Company are divided into and represented by Units. Each Member's respective number of Units is set forth on Exhibit A, as the same shall be amended from time to time to reflect any changes in the number of Units of the Members. The Members agree that each Unit shall entitle the Member possessing such Unit to:

(a)    equal governance rights per Unit and to one vote per Unit on matters on which the Members may vote under the Articles, this Agreement and/or the Act;

(b)    subject to Article VII of this Agreement, an equal proportionate share per Unit of the Company's net income, gains, losses, deductions and credits; and

(c)    subject to Article X of this Agreement, an equal proportionate share per Unit of amounts distributed to the Members in respect of their Interests upon dissolution of the Company.

Unless otherwise approved by the Manager, the Company will not issue certificates representing Units, but at the written request of a Member, the Company will provide a certified statement setting forth the total number of Units issued and outstanding and the number of Units issued to the requesting Member, as of the date of the statement.

Section 3.2    Capital Contributions. The initial Capital Contribution to the Company of each Member is set forth on Exhibit A. Absent approval by all of the Members, no Capital Contributions may be made other than in cash and the Company shall not be obligated to recognize as a Capital Contribution any transfer to the Company of property other than cash. No interest shall be paid on any Capital Contribution.

Section 3.3    Additional Capital Contributions. Absent approval by all of the Members, no Member shall be obligated to make any Capital Contribution other than the initial Capital Contribution specified in Section 3.2 of this Agreement. No Member shall have the right to make Capital Contributions beyond that Member's initial Capital Contribution as specified in Section 3.2 of this Agreement, unless authorized by all of the Members.

Section 3.4    Capital Accounts.

(a)    An individual capital account (the "Capital Account") shall be established and maintained on behalf of each Member, including any Additional Member who shall hereafter receive an Interest, in the manner provided by Treasury Regulation Section 1.704-1(b)(2)(iv).

To the extent consistent with Treasury Regulation Section 1.704-1(b)(2)(iv), the Capital Account of each Member shall consist of (i) the amount of cash such Member has contributed to the Company, plus (ii) the agreed fair market value of any property such Member has contributed to the Company, net of any liabilities assumed by the Company or to which such property is subject, plus (iii) the amount of profits or income (including

2

LMS 0007

tax-exempt income) allocated to such Member, less (iv) the amount of losses and deductions allocated to such Member, less (v) the amount of all cash distributed to such Member, less (vi) the fair market value of any property distributed to such Member, net of any liability assumed by such Member or to which such property is subject, less (vii) such Member's share of any other expenditures which are not deductible by the Company for federal income tax purposes or which are not allowable as additions to the basis of Company property, and (viii) subject to such other adjustments as may be required under the Code. The Capital Account of a Member shall not be affected by any adjustments to basis made pursuant to Section 743 of the Code but shall be adjusted with respect to adjustments to basis made pursuant to Section 734 of the Code to the extent provided in Treasury Regulation Section 1.704-1(b)(2)(iv)(m).

(b)    No Member shall have any liability or obligation to restore a negative or deficit balance in such Member's Capital Account.

Section 3.5    No Right of Redemption. No Member shall have the right to (a) have that Member's Units or Interest redeemed, (b) have that Member's Capital Contribution returned, or (c) subject to Article VII of this Agreement, otherwise receive property of the Company, even if that Member dissociates prior to dissolution of the Company. Even at dissolution, the Member's rights are limited to those set forth in Article X of this Agreement. To the extent a Member has a right to demand a distribution or return of the Member's Capital Contribution, the Member shall have only the right to demand and receive cash therefor.

Section 3.6    Member Loans or Services. Unless otherwise approved by a Majority in Interest of the Members, loans or services by any Member to the Company shall not be considered Capital Contributions.

Section 3.7    Sale of Additional Units and Admission of Additional Members. The Company may sell additional Units on terms and conditions as are determined by, and upon the approval of, all of the Members. Each Member specifically waives any preemptive rights. The Members may admit to the Company Additional Members, which may include Substitute Members, who will be entitled to participate in the rights of Members as described in Section 3.1 of this Agreement. Additional Members shall be allocated net income, gains, losses, deductions and credits by such method as may be provided in this Agreement, and if no method is specified, then as may be permitted by Section 706(d) of the Code.

ARTICLE IV.

MEMBERS

Section 4.1    Names and Addresses of Members. All Members of the Company and each Member's last known business, residence or mailing address shall be listed on the attached Exhibit A. The Members shall be required to update Exhibit A from time to time as necessary to accurately reflect the information therein.

Section 4.2    Action by the Members. The Members may act by vote or resolution approved or adopted at a meeting held in accordance with this Section 4.2 or by a written consent

signed in accordance with this Section 4.2. Rules for the conduct of meetings of the Members and for action by written consent of the Members follow:

(a) **Annual Meetings.** Annual meetings of the Members shall be held on the first Tuesday of June of each year, at the Principal Office of the Company, or on such other date or at such other place as may be designated by the Manager.

(b) **Special Meetings.** Special meetings of the Members shall be called upon delivery to the Members of notice of a special meeting of the Members given in accordance with Section 4.3(c) and signed and dated by the Manager or the Members holding in excess of twenty-five percent (25%) of the outstanding Units.

(c) **Notice of Meetings of the Members.** The Company shall deliver or mail written notice stating the date, time, and place of any Members' meeting and, in the case of a special Members' meeting or when otherwise required by law, a description of the purposes for which the meeting is called, to each Member of record entitled to vote at the meeting, at such address as appears in the records of the Company and at least ten (10), but no more than thirty (30), days before the date of the meeting.

(d) **Waiver of Notice.** A Member may waive notice of any meeting, before or after the date and time of the meeting as stated in the notice, by delivering a signed waiver to the Company for inclusion in the minutes. A Member's attendance at any meeting, in person or by proxy (i) waives objection to lack of notice or defective notice of the meeting, unless the Member at the beginning of the meeting objects to holding the meeting or transacting business at the meeting, and (ii) waives objection to consideration of a particular matter at the meeting that is not within the purposes described in the meeting notice, unless the Member objects to considering the matter when it is presented.

(e) **Voting by Proxy.** A Member may appoint a proxy to vote or otherwise act for the Member at a meeting pursuant to a written appointment form executed by the Member or the Member's duly authorized attorney-in-fact, provided that the appointment form is submitted to the Company for inclusion in the Company's records. The general proxy of a fiduciary is given the same effect as the general proxy of any other Member.

(f) **Presence.** Any or all Members may participate in any annual or special Members' meeting by, or through the use of, any means of communication by which all Members participating may simultaneously hear each other during the meeting. A Member so participating is deemed to be present in person at the meeting.

(g) **Conduct of Meetings.** At any Members' meeting, the Manager shall preside or appoint a person to preside at the meeting and shall appoint a person to act as secretary of the meeting. The secretary of the meeting shall prepare minutes of the meeting which shall be placed in the Company's minute book.

(h) **Quorum; Approval.** The presence of a Majority in Interest of the Members at an annual or special meeting is necessary for a quorum, unless approval of any action to be taken is required from all of the Members, in which case the presence of all of the Members is necessary for a quorum. Any action proposed to be taken by the Members shall be approved upon the affirmative vote of a Majority in Interest of the

4

Members, unless approval by all of the Members is required by the Articles, this Agreement or the Act, in which case such action shall be approved upon the affirmative vote of all of the Members.

(i) *Action by Written Consent.* Any action required or permitted to be taken by the Members at a meeting may be taken without a meeting if the action is committed to writing and is signed by the Members having the aggregate voting power sufficient to approve the action if it were taken at a meeting of the Members. The written consent shall be delivered to the Company for inclusion in the Company's minute book.

Section 4.3    Conflicts of Interest.

(a) A Member shall not be entitled to enter into transactions that may be considered to be competitive with the businesses of the Company, unless approved after full disclosure by the remaining Member(s) pursuant to Section 4.3(b) below. Neither the Company nor any Member shall have any right by virtue of this Agreement to share or participate in such other transactions.

(b) No transaction with the Company shall be void or voidable solely because a Member has a direct or indirect interest in the transaction if the disinterested Members, holding in the aggregate more than fifty percent (50%) of the Units held by such disinterested Members, knowing the material facts of the transaction and the Member's interest, authorize, approve or ratify the transaction.

(c) Notwithtanding any other provision of this Agreement to the contrary, the following conflict transactions are hereby approved and authorized by the Members:

(i) Trademark License Agreement by and between American Speed Association, L.L.C. and the Company, of even date herewith;

(ii) American Speed Assocaition, L.L.C.'s provision of employees and services to the Company, upon such terms as American Speed Association, L.L.C. and the Company shall mutually agree; and

(iii) American Speed Association, L.L.C.'s continuing operations as an automobile race sanctioning body.

Section 4.4    Action by the Remaining Members. Whenever the Articles, this Agreement or the Act provide or require approval or other action by the remaining Members, or a Majority in Interest of the remaining Members (i.e., those Members, or a Majority in Interest of those Members, other than the Member in question), the approval or other action of all of the remaining Members, or a majority in Interest of those Members, may be obtained or taken by written agreement thereof.

Section 4.5    Waiver of Partition. Each Member on behalf of such Member, its successors and its assigns, hereby waives any rights to have any Company property partitioned.

Section 4.6    Limitation on Authority. No Member (other than a Member who is also a Manager of the Company, and then, only in such capacity) has the authority or power to act for

or on behalf of the Company, to do any act that would be binding on the Company, or make any expenditures or commitments of expenditures on behalf of the Company.

Section 4.7    Liability.    No Member shall be liable for the debts, obligations or liabilities of the Company by reason of being a Member of the Company.

## ARTICLE V.

## MANAGEMENT OF THE COMPANY

Section 5.1    Manager.

(a)    The responsibility and authority for the day-to-day management of the Company shall be exclusively vested in one (1) Manager and the Manager shall have the authority to take any and all actions on behalf of the Company other than those actions set forth on Schedule II. The Manager shall serve for a term of five (5) years and until the Manager's successor has been duly elected by the Members and qualified. American Speed Association, L.L.C. shall be the initial Manager.

(b)    The Manager shall not be personally liable for the debts, obligations or liabilities of the Company, whether arising in contract, tort or otherwise, or for the acts or omissions of any Member, agent or employee of the Company. The Manager shall perform the Manager's duties in good faith, in a manner the Manager reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. The Manager is not liable for any action taken as the Manager, or for any failure to take any action, unless the Manager has breached or failed to perform the Manager's duties and the breach or failure to perform constitutes willful misconduct or recklessness.

(c)    In performing the Manager's duties, the Manager shall be entitled to rely on information, opinions, reports, or statements of the following persons or groups unless the Manager has knowledge concerning the matter in question that would cause such reliance to be unwarranted:

(i)    one or more employees or other agents of the Company whom the Manager reasonably believes to be reliable and competent in the matters presented;

(ii)    any attorney, public accountant, or other person as to matters which the Manager reasonably believes to be within such person's professional or expert competence; or

(iii)    a committee upon which the Manager does not serve, duly designated in accordance with a provision of the Articles or this Agreement, as to matters within its designated authority, which committee the Manager reasonably believes to be competent.

Section 5.2    Powers of the Manager.    The Manager shall have the right and authority to take any and all actions which the Manager deems necessary, useful or appropriate for the day-

to-day management and conduct of the Company's business and may exercise all powers of the Company and perform all lawful acts as are not by the Articles, this Agreement or the Act, directed or required to be exercised or done by the Members. Provided, however, that the power and authority to authorize, approve or direct the actions set forth on Schedule II shall require the approval of all of the Members.

Section 5.3   Salaries. The Company may pay to any Manager, Member, officer or other Person, a salary and/or bonus as compensation for services rendered to the Company as determined by the Manager. Such salaries and/or bonuses shall be treated as expenses of the Company and shall not be deemed to constitute distributions to the recipient of any profit, loss or capital of the Company.

Section 5.4   Removal. The Members may remove the Manager with or without cause by the unanimous consent of all Members. Any removal of the Manager shall become effective when written notice thereof is given by the Manager unless a later effective date is specified in such notice. Should a Manager be removed who is also a Member, such removal shall not affect the Person's rights as a Member except as may otherwise be provided in the Act, the Articles or this Agreement.

Section 5.5   Resignation. A Manager may resign from his, her or its position as a Manager at any time by notice to the Members. Such resignation shall become effective when such notice is received, unless a later effective date is specified in such notice.

Section 5.6   Vacancies. Any vacancy in the Manager's position shall be filled by the unanimous consent of all Members. A Person chosen to fill a vacancy shall serve the unexpired term of such Person's predecesor or in office. Any Manager's position to be filled by reason of an increase in the number of Managers shall be filled in the same matter or by election at an annual meeting or at a special meeting called for that purpose. A Manager chosen to fill a position resulting from an increase in the number of Managers shall hold office until the next annual meeting of Members and until such Person's successor has been duly elected and qualified by ASA.

Section 5.7   Delegation of Certain Management Authority. The Manager may delegate to one or more officers of the Company or one or more employees of the Company any management responsibility or authority. The Manager may create such offices, appoint such officers and delegate thereto such responsibility or authority as the Manager determines to be appropriate.

## ARTICLE VI.

## ACCOUNTING AND RECORDS

Section 6.1   Records and Accounting. For federal and state income tax purposes, the Manager shall be the "Tax Matters Member." The books and records of the Company shall be kept, and the financial position and the results of its operations recorded, in accordance with the accounting methods elected to be followed by the Manager for federal income tax purposes. The books and records of the Company shall reflect all Company transactions and shall be appropriate and adequate for the Company's business.

Section 6.2   Access to Accounting Records.  All books and records of the Company shall be maintained at any office of the Company or at the Company's Principal Office, and each Member, and his, her, or its duly authorized representative, shall have access to them at such office of the Company and the right to inspect and copy them at reasonable times.

Section 6.3   Annual Tax Information.  The Company shall use its best efforts to deliver to each Member within ninety (90) days after the end of each fiscal year all information necessary for the preparation of such Member's federal and state income tax returns. The Company shall also use its best efforts to prepare, within ninety (90) days after the end of each fiscal year, a financial report of the Company for such fiscal year containing a balance sheet as of the last day of the year then ended, an income statement for the year then ended, a statement of sources and applications of funds, and a statement of reconciliation of the Capital Accounts of the Members.

Section 6.4   Accounting Decisions.  All decisions as to accounting matters, except as otherwise specifically set forth in this Agreement, shall be made by the Manager. The Manager may rely upon the advice of the Company's accountant as to whether such decisions are in accordance with accounting methods followed for federal income tax purposes.

Section 6.5   Federal Income Tax Elections.  The Company may make, but is not required to make, all elections for federal income tax purposes, including but not limited to, the following:

   (a)   to the extent permitted by applicable law and regulations, elect to use an accelerated depreciation method on any depreciable unit of the assets of the Company; and

   (b)   in case of a transfer of all or part of the Interest of any Member, the Company may elect, pursuant to Sections 734, 743, and 754 of the Code, to adjust the basis of the assets of the Company.

## ARTICLE VII.

## ALLOCATIONS AND DISTRIBUTIONS

Section 7.1   Allocation of Net Income, Net Loss or Capital Gains.  Except as may be expressly provided otherwise in this Article VII, and subject to the provisions of Sections 704(b) and 704(c) of the Code, the net income, net loss, or capital gains of the Company for each fiscal year of the Company shall be allocated to each Member pro rata in accordance with the Members' Percentage Interests.

Section 7.2   Special Allocations.  The following special allocations shall be made in the following order:

   (a)   Minimum Gain Chargeback.  Except as otherwise provided in Treasury Regulation Section 1.704-2(f), notwithstanding any other provision of this Article VII, if there is a net decrease in Company Minimum Gain during any fiscal year, each Member shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to such Member's share of the

8

net decrease in Company Minimum Gain, determined in accordance with Treasury Regulation Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulation Sections 1.704-2(f)(6) and 1.704-2(j)(2). This Section 7.2(a) is intended to comply with the minimum gain chargeback requirement in Treasury Regulation Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)     Member Nonrecourse Debt Minimum Gain Chargeback. Except as otherwise provided in Treasury Regulation Section 1.704-2(i)(4), notwithstanding any other provision of this Article VII, if there is a net decrease in Member Nonrecourse Debt Minimum Gain attributable to a Member Nonrecourse Debt during any fiscal year, each Member who has a share of the Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Treasury Regulation Section 1.704-2(i)(5), shall be specifically allocated items of Company income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to such Member's share of the net decrease in Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Treasury Regulation Section 1.704-2(i)(4). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulation Sections 1.704-2(i)(4) and 1.704-2(j)(2). This Section 7.2(b) is intended to comply with the minimum gain chargeback requirement in Treasury Regulation Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)     Qualified Income Offset. In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5) or 1.704-1(b)(2)(ii)(d)(6), items of Company income and gain shall be specially allocated to each such Member in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the Adjusted Capital Account Deficit of such Member as quickly as possible, provided that an allocation pursuant to this Section 7.2(c) shall be made only if and to the extent that such Member would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article VII have been tentatively made as if this Section 7.2(c) were not in the Agreement.

(d)     Gross Income Allocation. In the event any Member has a deficit Capital Account at the end of any fiscal year which is in excess of the sum of (i) the amount such Member is obligated to restore pursuant to any provision of this Agreement, and (ii) the amount such Member is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulation Sections 1.704-2(g)(1) and 1.704-2(i)(5), each such Member shall be specially allocated items of Company income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 7.2(d) shall be made only if and to the extent that such Member would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article VII have been made as if Section 7.2(c) hereof and this Section 7.2(d) were not in the Agreement.

(e) <u>Nonrecourse Deductions</u>. Nonrecourse Deductions for any fiscal year shall be specifically allocated among the Members in proportion to their Percentage Interests.

(f) <u>Member Nonrecourse Deductions</u>. Any Member Nonrecourse Deductions for any fiscal year shall be specially allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such Member Nonrecourse Deductions are attributable in accordance with Treasury Regulation Section 1.704-2(i)(1).

(g) <u>Section 754 Adjustments</u>. To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Section 734(b) or Section 743(b) of the Code is required pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(m)(2) or 1.704-1(b)(2)(iv)(m)(4) to be taken into account in determining Capital Accounts as the result of a distribution to a Member in complete liquidation of the Member's Interest in the Company, the amount of such adjustment to Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such gain or loss shall be specially allocated to the Members in accordance with their Interests in the Company in the event Treasury Regulation Section 1.704(b)(2)(iv)(m)(2) applies, or to the Member to whom such distribution was made in the event Treasury Regulation Section 1.704-1(b)(2)(iv)(m)(4) applies.

Section 7.3   <u>Curative Allocations</u>. The allocations set forth in <u>Sections 7.2(a)</u> through <u>7.2(g)</u> hereof (the "<u>Regulatory Allocations</u>") are intended to comply with certain requirements of the Treasury Regulations. It is the intent of the Members that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Company income, gain, loss or deduction pursuant to this <u>Section 7.3</u>. Therefore, notwithstanding any other provision of this <u>Article VII</u> (other than the Regulatory Allocations), the Members shall make such offsetting special allocations of Company income, gain, loss, or deduction so that, after such offsetting allocations are made, each Member's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Member would have had if the Regulatory Allocations were not part of the Agreement and all Company items were allocated pursuant to <u>Section 7.1</u> of this Agreement.

Section 7.4   <u>Distribution of Available Cash</u>. Available Cash, if any, may be distributed to the Members at the discretion of the Manager. In the event the Manager elects to make distributions of Available Cash, such distributions shall be allocated to each Member pro rata in accordance with the Members' Percentage Interests.

Section 7.5   <u>Allocation of Income and Loss and Distributions in Respect of Interests Transferred</u>.

(a) If any Interest is transferred, or is increased or decreased by reason of the admission of an Additional Member or otherwise, during any fiscal year of the Company, each item of net income, gain, loss, deduction, or credit of the Company for such fiscal year shall be assigned pro rata to each day in the particular period of such fiscal year to which such item is attributable (i.e., the day on or during which it is accrued or otherwise incurred), and the amount of each such item so assigned to any such day shall be

10